# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

SILVESTER WOODS,     *

    Plaintiff,     *

v.     *     Case No.: PWG-18-3494

WASHINGTON METROPOLITAN     *
AREA TRANSIT AUTHORITY, ET AL.,

    Defendants.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Silvester Woods, *pro se*, filed this action stemming from the events surrounding his brief employment with and termination by Defendant Washington Metropolitan Area Transit Authority ("WMATA"). Am. Compl., ECF No. 19. Defendant WMATA moved to dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim. ECF No. 20. Defendant Amalgamated Transit Union, Local 689 moved to dismiss for failure to state a claim. ECF No. 22.[1] Because this Court lacks jurisdiction over many of the claims in the Amended Complaint and because Plaintiff has failed to state a claim for those over which this Court does have jurisdiction, Defendants' Motions are GRANTED. Accordingly, given that Plaintiff already had the opportunity to amend, Plaintiff's Amended Complaint is DISMISSED with prejudice.

---

[1] The parties fully briefed the motions. ECF Nos. 20-1, 22-1, 24, 27, 28. A hearing is not necessary. *See* Loc. R. 105.6.

**I. BACKGROUND**[2]

On July 10, 2018, Plaintiff Silvester Woods, an African American male, accepted an offer of employment with Defendant WMATA as a Student MetroBus Operator, a full-time paid trainee position. ECF No. 19-3 at 4.[3] This position was covered by a collective bargaining agreement ("CBA") with Defendant ATU, Local 689. *Id.* at 2-3. In addition to several other conditions of employment, the collective bargaining agreement required Woods to complete a probationary period before receiving a final offer letter and allowed for WMATA to "discipline or discharge [Woods] without right of appeal" during that period. *Id.* at 2. This was not Woods's first employment as a bus operator; he possessed a Commercial Driver's License and previously worked for First Transit, Inc. as a Bus Operator for 10 years. Am. Compl. ¶ 7, ECF No. 19. Currently, he works as a Bus Operator for Fairfax Connector. *Id.* ¶ 8.

On July 23, 2018, Woods began his training as a Student Metro Bus Operator at WMATA's Carmen Turner Facility. *Id.* ¶ 6. During training, Woods tried to follow Instructor Louis Rucker's directions, but Rucker would challenge his operator experience and give him unclear directions, trying to confuse him. *Id.* ¶ 12. Moreover, Woods and Rucker "did not agree on how work should be done." EEOC Charge at 3, ECF No. 19-5. When Rucker yelled at another employee and made them cry, Woods chose not to speak up and correct Rucker in fear of losing his job but did report the incident to the Director of Bus Training, Dylan Wolfe, who told Woods to accept the instructor's behavior "in order to keep his job." Am. Compl. ¶¶ 10-11. Not only would Rucker yell at the other employee, he also "would insult, degrade, and verbally attack" Woods, attempting

---

[2] For purposes of considering the Defendants' Motions to Dismiss, this Court accepts as true the facts that Plaintiff alleged in the Amended Complaint. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[3] Except where citing to a specific paragraph, pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

to intimidate him. *Id.* ¶ 12. Woods's issues with Rucker continued, leading Woods to explain to Rucker that he could be "sued if his attacks were malicious and intentional." *Id.* ¶ 13.

These issues came to a climax on August 3, 2018. While on the bus training, Rucker reported that Woods refused to operate the bus, got out of the operator's seat, and told Rucker to "Do it your dam self." ECF No. 19-2 at 2. Woods then took out his cell phone and began using it before Rucker reminded him of WMATA's Electronic Device Policy prohibiting such conduct. *Id.* Then, when the bus returned to the training facility, Woods exited the bus prior to being released but was stopped by Rucker and another instructor. *Id.* Woods was then directed to wait in the Administrative Office to meet with management. *Id.* There, Director Wolfe and Anthony Dawson, Supervisor of Bus Training, met with Woods regarding the incident and Woods admitted to the conduct reported by Rucker but noted he was talking to himself and not being disrespectful or discourteous. *Id.*; ECF No. 19-4 at 3. Citing Woods for "unprofessional conduct unbecoming of a Professional Bus Operator while in Bus Training and violating WMATA's Electronic Device Policy," WMATA terminated Woods effective August 3, 2018. ECF No. 19-2 at 2-3. While his separation paperwork was being compiled, Woods informed Wolfe and Dawson that he was a certified paralegal. ECF No. 19-4 at 3.

Woods then filed a complaint with the Equal Employment Opportunity Commission, alleging discrimination in violation of Title VII and the Age Discrimination in Employment Act of 1967. ECF No. 19-5 at 3. The EEOC declined to prosecute and issued Woods a "Right to Sue" letter on August 14, 2018. *Id.* at 2. On August 27, 2018, Woods contacted ATU Local 689 requesting it to file a Title VII grievance on his behalf, a request which was denied. ECF No. 19-4 at 2-4; Am. Compl. ¶ 22.

Woods filed this lawsuit on November 13, 2018, followed by an Amended Complaint on January 10, 2019. ECF Nos. 1, 19. In accordance with this Court's Letter Order setting deadlines for further motions, ECF No. 17, WMATA filed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on January 29, 2019, ECF No. 20, and the ATU filed its Motion to Dismiss pursuant to Rule 12(b)(6) on February 5, 2019, ECF No. 22.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) challenges a court's authority to entertain a suit on grounds of subject matter jurisdiction. The burden of establishing the court's subject matter jurisdiction rests with the plaintiff. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The district court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor & City of Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans*, 166 F.3d at 647).

Alternatively, a motion to dismiss pursuant to Rule 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, 2012 U.S. Dist. LEXIS 176754, *10-*11 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Where, as here, the plaintiff has filed a pleading without the aid of counsel, the court must construe the pleading liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 )2007) (per curiam); *White v. White*, 886. F.2d 721, 722-23 (4th Cir. 1989). Liberal construction, though, does not mean a court may overlook a

4

clear failure in the pleading to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 448 (4th Cir. 2011). Where, as here, a plaintiff has attached exhibits to the complaint, these exhibits are considered part of the pleading. *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 757 n.4 (W.D. Va. 2007), *aff'd*, 282 F. App'x 260 (4th Cir. 2008).

Lastly, "'[t]he determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court.'" *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (quoting *180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)). Generally, the plaintiff should be afforded the opportunity to amend, *see id.*, or dismissal should be without prejudice. *See Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. A'ppx 899, 900 (4th Cir. 2013) ("Where no opportunity is given to amend the complaint, the dismissal should generally be without prejudice.").

## III. DISCUSSION

### A. WMATA's Motion to Dismiss Pursuant to 12(b)(1) (Counts 1-3, 5, 7-9)

Woods asserts numerous claims against WMATA stemming from the short course of events leading to his termination. Am. Compl. ¶¶ 9-31. Specifically, these claims can be construed as: breach of contract (Count 1); the at-will employment contract is void, unconscionable, and unenforceable (Count 2); the contract violated public policy (Count 3); WMATA's cell phone policy violates Fourteenth Amendment Due Process (Count 5); "unprofessional conduct contrasted to misconduct by the plaintiff" (Count 7); conspiracy (Count 8); and intentional infliction of emotional distress and damages (Count 9). WMATA asserts immunity from these claims pursuant to the WMATA Compact and the Eleventh Amendment.

The Eleventh Amendment bars suit in federal court against an unconsenting state and any governmental units that are arms of the state unless Congress abrogates that immunity. *See Alden v. Maine*, 527 U.S. 706, 755-57 (1999). To properly abrogate a state's immunity, Congress must unequivocally declare such an intent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). WMATA, a quasi-governmental entity created by the Washington Metropolitan Area Transit Authority Compact, which is codified in section 10-204 of Maryland's Transportation Article, enjoys the same sovereign immunity enjoyed by the Compact's signatory states. *See Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004).

The Compact waives WMATA's immunity for breaches of contract and tort "committed in the conduct of any proprietary function" but not for those breaches "occurring in the performance of a governmental function." Md. Code Ann., Transp. § 10-204 (80). In determining whether a certain action is covered by the Compact's immunity, courts ask "whether the claim seeks to impose liability for conduct that is discretionary, in which case the claim is barred by

immunity, or ministerial, in which case the claim may proceed." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015). Therefore, if an action is "quintessentially governmental" or is discretionary, immunity applies. *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997). Notably, courts have consistently found that WMATA's sovereign immunity "encompasses 'the hiring, training, and supervision of WMATA personnel.'" *Jones. v. WMATA, 205 F.3d 428, 432* (D.C. Cir. 2000) (quoting *Burkhart*, 112 F.3d at 1217); *see Lizzi v. Alexander, 255 F.3d 128, 133-34* (4th Cir. 2001) (*overruled in part on other grounds by Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003).

Here, each of these claims relates to the "hiring, training, and supervision" of Woods by his WMATA supervisors, is within WMATA's governmental role, and is therefore barred by WMATA's sovereign immunity. Generally, Woods alleges that the terms of his employment give him numerous causes of action, that he was mistreated during training, and that his termination was without proper cause, all actions which fall squarely within the "hiring, training, and supervision" universe. Additionally, Woods alleges a WMATA personnel policy regarding the use of cell phones while on the job is unconstitutional. This policy is exactly the type of discretionary activity barred by the Compact's immunity; it is a personnel policy decision made by supervisors and thus certainly not a ministerial function. Therefore, because Counts 1, 2, 3, 5, 7, 8, and 9 are all barred by WMATA's immunity, and because such immunity has not been clearly abrogated, the Court dismisses them for lack of subject matter jurisdiction. Defendant WMATA's Motion pursuant to Rule 12(b)(1) is GRANTED and Counts 1-3, 5, and 7-9 are dismissed.

### B. WMATA's Motion to Dismiss Pursuant to 12(b)(6) (Count 6)

As for Woods's claim that WMATA violated Title VII, Woods fails to establish a claim because he does not provide sufficient allegations to show, beyond mere speculation, that he was

7

treated differently because of his race or that the alleged unwelcome conduct was based on his race.[4]

   1. *Disparate Treatment*

Woods asserts that WMATA violated Title VII because "Title VII prohibits employment decision based on stereotypes and assumption about abilities, traits, or the performance of individuals of certain racial group." Am. Compl. ¶ 5. Woods also alleges that WMATA "dealt with new hired employees more harshly than they dealt with other employees," ECF No. 19-4 at 2; that "minorities were more likely to b[e] mistreated, " *Id.* at 4; and, finally, that this conduct, in total, raises an "issue of pretext by evidence in which insubordination and abusive language by other WMATA's employees were not discharged for similar conduct," *Id.* at 3. These allegations read like a claim of disparate treatment relating to both Rucker's treatment of Woods and his eventual termination from WMATA. WMATA contends that Woods's "naked allegations of racial discrimination" require the Court to "fill in the gaps [of the Complaint] with speculation," and thus fail to establish a claim. WMATA Mot. Dismiss at 7-9, ECF No. 20-1.

Workplace race discrimination claims under Title VII apply the *McDonnell Douglas* framework. *See Lightner v. City of Wilmington,* 545 F.3d 260, 263 (4th Cir. 2008). To establish a prima facie case of disparate treatment under this framework, a plaintiff must show that: (1) she

---

[4] As best I can discern from the Amended Complaint and construing it, specifically ¶¶ 5, 12, 25, and the EEOC Charge of Discrimination [ECF No. 19-5] liberally, I interpret Count 6 to assert a Title VII claim on the basis of disparate treatment and a hostile work environment.

Moreover, even with a liberally interpreted pleading, it is not clear that Woods brings a retaliation claim. But, it appears from his Opposition to WMATA's Motion to Dismiss [ECF No. 24 at 6-7] that he believes he is. On the EEOC Charge of Discrimination [ECF No. 19-5], Woods neither included facts relating to such a charge nor did he check the "retaliation" box (he only checked the "race" and "age" boxes). Therefore, because Woods has failed to exhaust his administrative remedies relating to a retaliation claim, such a claim, if any, will be dismissed. *See* 42 U.S.C. § 2000e-5(f)(1).

is a member of a protected class; (2) she suffered an adverse employment action; (3) her job performance was satisfactory; and (4) she received different treatment from similarly situated employees not in her protected class. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). However, to survive a motion to dismiss, plaintiff "need not plead facts sufficient to establish a prima facie case" of discrimination under this framework. *Woods v. City of Greensboro*, 855 F.3d 639, 647-48 (4th Cir. 2017). Rather, a plaintiff must plead facts sufficient to rise above the speculative level "to support a plausible claim," thereby allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, Woods presents "vague claims of differing treatment" to support his claim that the alleged conduct was based on his race. *Jackson v. Maryland*, 171 F. Supp. 2d 532, 541 (D. Md. 2001). This will not suffice. To be sure, Woods is not required to provide allegations comparing his treatment to a similarly situated white comparator. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003). However, because he does "attempt[] to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," *[Swaso v. Onslow Cty. Bd. Of Educ.](), 698 F. App'x 745, 748* (4th Cir. 2017), there must be sufficient factual allegations of differing treatment to "nudg[e] [such] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Instead of offering meaningful allegations to substantiate these claims, Woods relies on conclusory allegations that such treatment existed. There are no allegations that a fellow trainee who is not African American and who acted similarly to Woods escaped harassment, discipline, or termination. Indeed, Woods even alleges that all "new hired employees" were treated more harshly than other employees, undercutting his claim that the alleged conduct towards him was because of his race. ECF No. 19-4 at 2; *see* Am. Compl. ¶ 12. This assertion seems to suggest

9

that *all* trainees, not just *African American* trainees, were treated poorly by instructors. Furthermore, Woods even alleges the senior employees at WMATA assumed they could act this way because the "newly hired employees . . . were not protected by the Union." Am. Compl. ¶ 12. Therefore, Woods fails to provide facts sufficient to allow the Court to reasonably infer disparate treatment without engaging in speculation. For these reasons, Woods's Title VII claim cannot be supported by allegations of disparate treatment based on his race and must be dismissed.

        2. *Hostile Work Environment*

A claim for hostile work environment based on race exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish such a claim, the plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016) (internal quotations omitted). Thus, just as with the claim of disparate treatment, Woods's hostile work environment claim requires a showing that the alleged conduct was based on his race. Woods's claim finds the same fate here.

Woods alleges harassment by his supervisor who "would insult, degrade and verbally attack" him, attempted to intimidate him, and made him fear for his job if he spoke up in support of his other co-trainees, all activity which Woods was told to accept "in order to keep his job."

Am. Compl. ¶¶ 10-12.  Additionally, the harassment made Woods "look foolish" in the presence of his coworkers.  *Id.* ¶ 12.

However, nowhere does Woods allege that he ever endured conduct that was racial in its substance.  *See, e.g., [Ragland v. A.W. Indus.](), 2009 U.S. Dist. LEXIS 71889, \*25-26* (D. Md. Aug 13, 2009) (collecting cases where courts found sufficient evidence of racially hostile work environments when claims were supported by allegations that a supervisor uttered racial epithets).  Instead, Woods relies on the conclusory allegation that the harassment related to Woods's experience and ability to perform the job and was "based on stereotypes and assumption about abilities, traits, or the performance of individuals of certain racial group."  Am. Compl. ¶¶ 12, 25.  Just as analyzed above, *see supra* Section III.B.1, these facts are insufficient to nudge Woods's claim, that he endured a hostile work environment based on race, from the possible to the plausible.  Thus, without factual allegations of direct evidence of discrimination or non-conclusory allegations of unwelcome severe or pervasive conduct based on race, Woods's hostile work environment claim must be dismissed.  For all the reasons stated above, Defendant WMATA's Motion pursuant to Rule 12(b)(6) is GRANTED and Count 6 is dismissed.

### C.  ATU, Local 689's Motion to Dismiss Pursuant to 12(b)(6) (Count 4)

The sole count pleaded against the Union is for a breach of their duty of fair representation of "all employees whether they unionized or not."  Am. Compl. ¶ 22.  In support of this claim, Woods alleges he contacted the Union and informed them of the events leading to his termination from WMATA and requested the Union file a grievance on his behalf.  ECF No. 19-4 at 2-4.  By denying his request for representation in his Title VII grievance, Woods alleges the Union breached their duty of fair representation.

The Union does not contest that it is party to an agreement[5] that provides for representation of some WMATA employees, but it asserts that it was not required to represent Woods because he was a probationary employee and the Union was barred from initiating grievances for probationary WMATA employees under the collective bargaining agreement (CBA). ATU Mot. Dismiss at 2, ECF No. 22-1. Moreover, the Union points out that Woods's Amended Complaint lacks any specific factual allegations as to any agreement, whether or when Woods signed any agreement, how the Union violated its duty, or from where that duty came. *Id.* at 6.

Section 301 of the Labor Management Relations Act implies a federal cause of action for a union's breach of its duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171 (1967). Such a breach is effectively a breach of contract claim, with the contract being the collective bargaining agreement. *See [DelCostello v. Int'l Bhd. of Teamsters](#)*, 462 U.S. 151, 164-65 (1983). As such, the motion to dismiss standard for a contract claim is informative. "[A] breach of contract claim is sufficiently pled when the pleader 'alleges the existence of a contractual obligation' and a 'material breach of that obligation' by the opposing party." *Yarn v. Hamburger Law Firm, LLC*, 2014 U.S. Dist. LEXIS 88574, *8 (D. Md. June 30, 2014). "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Cinar v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 99905, *11-*12 (D. Md. July 23, 2014) (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012)). A plaintiff

---

[5] The Union attached a document to its Motion which it says is the applicable CBA [ECF No. 22-4]. Even if the Court were to find this document integral to the Amended Complaint and authentic, and thus be able to consider it at the Motion to Dismiss stage, the document itself says it is the Agreement between WMATA and Local 689 "effective from July 1, 2012 through June 30, 2016." ECF No. 22-4 at 2. The events leading to this litigation occurred from July to August 2018, and thus do not fall within the attached Agreement's effective dates.

12

is not required to "attach a complete copy of a contract to the complaint or provide specific language of the contract, but rather, they need only to provide enough information" to allow the defendant to respond. *Yarn*, 2014 U.S. Dist. LEXIS 88574, *3.

Woods's allegations are that he contacted the Union on August 27, 2018, requesting representation and they denied the request. ECF No. 19-4 at 2-4. This denial, according to Woods, constituted a breach of the duty owed to all employees. Am. Compl. ¶ 22. However, the offer letter he received from WMATA (attached as an exhibit to the Amended Complaint) suggests otherwise: "[P]ursuant to the terms of the collective bargaining agreement (CBA) that governs this position, you will be required to complete a . . . probationary period . . . During which time Washington Metropolitan Area Transit Authority (WMATA) *may discipline or discharge you without right of appeal*." ECF No. 19-3 at 2 (emphasis added). Therefore, without any further factual allegations regarding the CBA or the duty required therein, the court is left to infer that because Woods had no right of appeal given that he was discharged during the probationary period, the Union was not required to represent him in an appeal of his discharge from probationary employment.

Therefore, beyond stating simply that the Union had a duty of fair representation, Woods fails to provide sufficient factual allegations to substantiate this claim. Woods cites to section 3-306 of Maryland's State Personnel and Pensions Article, which prohibits employee organizations from "not fairly representing employees in collective bargaining or in any other matter in which the employee organization has the duty of fair representation." Md. Code Ann., State Pers. & Pens. § 3-306. However, this provision prohibits such conduct when a duty already exists; simply citing to it does not remedy the lack of certain and definite factual allegations surrounding the genesis of the alleged duty and its parameters. This allegation—that there existed a duty and the

13

Union breached it—is far too conclusory for the Court to make any reasonable inferences that the Union is liable.

In short, although it is true that Woods cites law—both federal caselaw and the Maryland code—requiring compliance with a duty of fair representation, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. Without further factual development providing specifics to allow the Court to draw non-speculative inferences that the Union owed Woods a duty and breached that duty, the claim cannot survive. For these reasons, Defendant ATU's Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED and Count 4 is dismissed with prejudice.

### D. ATU, Local 689's Request for Attorney Fees

As a final matter, the Union is requesting full attorney fees from Woods because Woods filed a frivolous lawsuit and did so in bad faith because he was "made aware several times that he was a probationary period employee" and, as such, had no right to representation by the Union. ATU Mot. Dismiss at 12. Although the Court does have the discretion to award a prevailing defendant attorney's fees when the plaintiff "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," this exception from the American rule is an extraordinary one. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). Given the dismissal of this case at an early stage and that plaintiff proceeds in this case *pro se* and, although having paralegal experience, is not a lawyer presumed to understand the law, I decline to take the extraordinary measure of finding bad faith and awarding the Union fees.

### E. Dismissal of the Amended Complaint is with Prejudice

For Counts 1-3, 5, and 7-9, dismissal is with prejudice because, given that the Court dismisses them for lack of jurisdiction, allowing Woods to amend would be futile.

As for Counts 4 and 6, when a plaintiff has had the opportunity to amend in response to a defendant's identification of pleading deficiencies but still fails to state a claim, dismissal with prejudice is appropriate because another opportunity to amend would be futile. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Here, the Court set out the procedure for the filing of motions in a Letter Order at ECF No. 3. In compliance with that Letter Order, WMATA filed its request for leave to file a Motion to Dismiss. ECF No. 8. Soon after, ATU, Local 689 filed its Motion to Dismiss, which was stricken for noncompliance with the Court's Letter Order. ECF No. 10. Then, as memorialized by Letter Order, this Court held a telephone conference during which it gave Woods the opportunity to amend in light of the Defendants identification of his pleading deficiencies. ECF No. 17. Moreover, although he proceeds *pro se* which calls for liberally construing the pleadings, Woods notes he has paralegal experience. Under these circumstances, and given that Defendants each identified the Complaint's deficiencies meaning Woods had an opportunity to amend to specifically address such deficiencies but did not sufficiently do so, the dismissal of Counts 4 and 6 shall be with prejudice.

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, it is, this 8th day of August, 2019, by the United States District Court for the District of Maryland, hereby ORDERED that

1. WMATA's Motion to Dismiss, ECF No. 20, is GRANTED;
2. ATU, Local 689's Motion to Dismiss, ECF No. 22, is GRANTED;
3. The Amended Complaint, ECF No. 19, is DISMISSED with prejudice;
4. The Clerk SHALL CLOSE this case; and

5. The Clerk SHALL PROVIDE a copy of this Memorandum Opinion and Order to the parties.

/S/
Paul W. Grimm
United States District Judge